UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL KOSTOFF,

    Petitioner,

vs.                                                Case No. 8:05-CV-1341-T-27TGW
                                                           8:05-CV-1727-T-27TGW

FLEET SECURITIES, INC.,

    Respondent.

_____/

## ORDER

**BEFORE THE COURT** is Kostoff's Petition for Confirmation of Arbitration Award and Request for Attorney Fees and Costs (Dkt. 2), Fleet Securities, Inc.'s Opposition to the Petition to Confirm and Cross-Petition to Vacate Arbitration Award and Memorandum of Law in Support (Dkts. 5, 6), Kostoff's Memorandum of Law in Opposition to Fleet's Cross-Petition to Vacate Arbitration Award (Dkt. 15), Kostoff's Corrected Supplemental Memorandum in Opposition to Fleet's Petition to Vacate Arbitration Award (Dkt. 39), and Fleet's Response to Kostoff's Corrected Supplemental Memorandum (Dkt. 41).[1] Upon consideration, Kostoff's petition to confirm the arbitration award is GRANTED. Fleet's cross-petition to vacate the arbitration award is DENIED.

### Background

Michael Kostoff initiated this action seeking confirmation of an arbitration award issued in

---

[1] Additionally, this Court has for its consideration the relevant filings in consolidated case no.: 8:05-CV-1727-T-27TGW, including Fleet's Amended Petition to Vacate Arbitration Award (Dkt. 13), Fleet's Memorandum of Law in Support of Petition to Vacate Arbitration Award (Dkt. 17), and Kostoff's Memorandum of law in Opposition to Fleet's Amended Petition to Vacate Arbitration Award (Dkt. 28).

1

the underlying arbitration proceeding entitled, *Michael Kostoff v. Vincent Cervone, Yankee Financial, Inc. and Fleet Securities, Inc.*, NASD-DR Case No. 04-04259. Via cross-petition, Fleet Securities, Inc. ("Fleet") seeks to vacate the arbitration award.[2]

In March 2000, Kostoff opened a securities brokerage account with Glen Michael Financial ("GMF"), a registered broker-dealer. Her broker at GMF was Vincent Cervone. GMF and Fleet were parties to a Clearing Agreement, whereby GMF cleared its trades through Fleet.[3] Pursuant to the Clearing Agreement, Fleet was obligated to perform ministerial and back office clearing services for GMF and GMF was solely responsible for all "Compliance, Supervisory and Internal Audit functions . . ." (Grannum Aff., Ex. 3). Kostoff was made aware of Fleet's responsibilities via correspondence from Fleet entitled "Important Notice to All of Our Introducing Firms' Customers." (Grannum Aff., Ex. 3, Ex. F). The Notice explained that Fleet would not be responsible for any of the investment recommendations made by the broker and would not "audit, supervise, control or verify information provided" by the broker in connection with Kostoff's account. (Grannum Aff., Ex. 3, Ex. F).

In January 2001, GMF advised Fleet that its retail business was being shut down. Charles LaBella, the Vice President and Director of Fleet, referred GMF to Yankee Financial, Inc. ("Yankee") an independent broker/dealer firm that also cleared its trades through Fleet pursuant to a standard Clearing Agreement. Yankee agreed to accept GMF's retail business and hire its

---

[2] Fleet commenced a separate action to vacate the arbitration award in the Orlando Division of the Middle District of Florida entitled *Fleet Securities, Inc. v. (Mrs.) Michael Kostoff, Case No.: 8:05-CV-1727-T-27TGW.* That case was transferred to the Jacksonville Division and later transferred to the Tampa Division where it was ultimately consolidated with Kostoff's action to confirm the arbitration award.

[3] Clearing agents are commonly used in the securities field. Generally, a clearing agent contracts to do the introducing broker-dealer's bookkeeping and performs custodial functions for the introducing broker-dealer. (Dkt. 6, p. 2).

2

registered employees. Kostoff agreed to transfer her account to Yankee Financial in March 2001. Cervone continued as her broker at Yankee Financial.

Thereafter, the value of Kostoff's account continued to decline. In June 2004, Kostoff initiated an arbitration proceeding against Vincent Cervone, Yankee Financial and Fleet, alleging the respondents committed various wrongful acts, including negligent misrepresentation, unauthorized trading, churning, and breach of fiduciary duty. (Grannum Aff., Ex. 2). Kostoff specifically alleged that Fleet, as the clearing firm for GMF and Yankee, was liable because it served as a conduit that provided the introducing firms the ability to engage in the proscribed activity which damaged Kostoff's account. (Grannum Aff., Ex. 2, p. 7).

During the course of the arbitration proceeding, Fleet filed a Petition to Dismiss, seeking dismissal of Kostoff's claims on the ground that it could not be legally responsible for supervising the activities of employees of introducing firms because Fleet was acting merely as a clearing firm. (Grannum Aff., Ex. 3). The Petition to Dismiss was not granted. On June 14 and 15, 2005, an arbitration hearing was conducted in Orlando, Florida, pursuant to the National Association of Securities Dealers ("NASD") Dispute Resolution Arbitration Rules.[4] Kostoff's claim was heard by a panel consisting of three arbitrators, one of whom had experience in the securities industry (the "Panel").

On June 27, 2005, the Panel issued an award in favor of Kostoff and against Fleet in the amount of $114,375.10 (plus prejudgment interest) in compensatory damages and $343,125.30 in punitive damages. (Dkt. 2, Ex. A, p. 4). The Panel awarded Kostoff attorneys' fees pursuant to

---

[4] Prior to the arbitration hearing, Yankee Financial and Vincent Cervone reached settlements with Kostoff, thereby leaving Fleet as the only remaining respondent.

§ 517.211(6), Fla. Stat., with the amount of fees to be determined by a "court of competent jurisdiction." (Dkt. 2, Ex. A, p. 4). In relevant part, the arbitration award provides:

> The Panel found by the testimony and exhibits presented that [Fleet], contracted with Glen Michael Financial/Yankee requiring compliance with the rules of the NYSE and NASD for the handling of customer accounts. They in turn agreed to act as the clearing agent for respondents Glen Michael Financial/Yankee Financial and its broker Vincent Cervone. Under that contract [Kostoff] became a third party beneficiary and Respondent had a duty to monitor the originating brokerage. Under the Florida "Blue Sky" Statutes, the rules and regulations of the Securities and Exchange Act, the clearing contract, and notice to [Kostoff] to act as the "Back Office" administrator for the former Co-Respondents, [Kostoff] had a right to rely on Fleet for fair dealing. By this, Respondent, [Fleet], had a duty to be aware of [Kostoff's] opening documents; and the obvious totally incompatible objectives as filed with [Fleet] on a [Fleet] provided form. [Fleet] equally had the duty to be aware of the malfunctioning of the Broker-Dealer Glen Michael Financial/Yankee Financial and Broker Vincent Cervone, and in matter of fact was so aware at all times during the duration of [Kostoff's] Account. The enabling of this combination to continue as Yankee Financial was shown to fall squarely on [Fleet]. It was a Fleet agent who, aware of the impending closing for cause of the Glen Michael office, not wishing to lose the business of this brokerage office, knowingly, willfully and wantonly conspired to bring together a successor Broker-Dealer so as to enable the offending Glen Michael Financial to change its name to Yankee Financial to continue to defraud [Kostoff]. Throughout the association of [Fleet], and the offending Brokerage, Glen Michael Financial/Yankee, its' broker Vincent Cervone, Fleet was aware and under the circumstances had a duty to be aware of the constant churning of [Kostoff's] account in unsuitable and unauthorized investments which is a statutory fraud in the State of Florida under Chapter 517. Indeed the Panel found that Fleet was the major factor in allowing the fleecing of [Kostoff's] brokerage account and joined with the broker and broker-dealer in total violation of, Securities Exchange Act, rule 10b-5, and Florida Statutes 517, where mere negligence is the standard of liability.

(Dkt. 2, Ex. A, p. 4).

Fleet contends this Court should vacate the arbitration award on the ground that "the Panel irrationally refused to consider the applicable law . . . which states that the obligation to supervise the activities of registered representatives at an introducing broker lies with the introducing broker, not with the clearing firm." (Dkt. 5, p. 6). Specifically, Fleet contends the Panel erroneously

4

reached the following findings of facts and conclusions of law: (1) Fleet owed Kostoff a separate duty; (2) Fleet enabled the combination of GMF and Yankee; (3) Fleet had a duty to monitor GMF and Yankee; (4) Kostoff was a third-party beneficiary to the Clearing Contract; and (5) a conspiracy existed between Fleet and GMF or Yankee. (Dkt. 6, p. 9). Fleet also contends the Panel acted in manifest disregard of the law in awarding punitive damages and that its award of attorney's fees was improper. (Dkt. 6, pp. 18-20).

## Applicable Law

The provisions of the Federal Arbitration Act, 9 U.S.C. §§1 *et seq.* ("FAA"), control this Court's review of an arbitration award. Judicial review of arbitration awards is "narrowly limited" and the FAA presumes that arbitration awards will be confirmed. *See Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1188 (11th Cir. 1995). The FAA "does not allow courts to roam unbridled in their oversight of arbitration awards, but carefully limits judicial intervention to instances where the arbitration has been tainted in specified ways." *Robbins v. Day*, 954 F.2d 679, 683 (11th Cir.), *cert. denied*, 506 U.S. 870 (1992) (citations and quotations omitted). "[F]ederal courts should defer to an arbitrator's decision whenever possible." *B.L. Harbert Intern., LLC v. Hercules Steel Co.*, 41 F.3d 905 (11th Cir. 2006) (citing *Robbins*, 954 F.2d at 682).

Pursuant to 9 U.S.C. § 10(a), there are four statutory grounds for vacating an arbitration award, none of which are applicable in this case.[5] In addition to the statutory grounds, the Eleventh

---

[5] The four statutory grounds for vacating an arbitration award are:
(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them at a mutual, final and definite award upon the subject matter submitted could not be made.
9 U.S.C. § 10(a).

5

Circuit has recognized three non-statutory grounds for vacatur. An award may be vacated on non-statutory grounds (1) if it is arbitrary and capricious, (2) if enforcement of the award is contrary to public policy, or (3) if the award was made in manifest disregard for the law." *Hercules*, 441 F.3d at 910. Fleet, "as the moving party, bears the burden of setting forth sufficient grounds to vacate the arbitration award." *Scott v. Prudential Securities, Inc.*, 141 F.3d 1007, 1014 (11th Cir. 1998).

### Discussion

Fleet contends the arbitration award should be vacated because (1) it is arbitrary and capricious and (2) because the Panel acted in manifest disregard of the law. These two non-statutory grounds could conceivably be encompassed in one another. *See Montes*, 128 F.3d at 1459, n. 5. However, "courts, including [the Eleventh Circuit] have treated these reasons as discrete and separate." *Id.* Accordingly, each ground will be addressed separately.

1. <u>Arbitrary and Capricious</u>

Although rare, an arbitration award may be vacated if the award is arbitrary and capricious. *See Ainsworth v. Skurnick*, 960 F.2d 939, 941 (11th Cir. 1992), *cert. denied*, 507 U.S. 915 (1993). "[T]he arbitrary and capricious standard is extremely deferential." *Merrill Lunch, Pierce, Fenner & Smith, Inc. v. Lambros*, 1 F. Supp. 2d 1337, 1346 (M.D. Fla. 1998). "An award is arbitrary and capricious only if a [legal] ground for the arbitrators decision cannot be inferred from the facts of the case." *Id.* (citing *Raiford v. Merrill Lynch, Pierce, Fenner & Smith*, 903 F.2d 1410, 1413 (11th Cir. 1990). If, based on the totality of the evidence, the arbitrators could have fashioned their award based on any valid reason, the award should not be vacated. *See Scott v. Prudential Securities, Inc.*, 141 F.3d 1007, 1017 (11th Cir. 1998) (citing *Raiford*, 903 F.2d at 1413). "Only where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside." *Merrill Lynch*, 70 F.3d at 421 (citing *Ainsworth*, 960 F.2d at 941).

Based on the totality of the evidence presented to the Panel, including but not limited to Fleet's relationship with GMF and Yankee and the testimony of Fleet employee Charles LaBella, this Court cannot conclude that there was *no* basis in fact for the Panel's legal grounds for the award. While it is true that clearing firms that perform typical ministerial functions are generally not liable for the wrongful acts of the introducing broker, an exception to this rule has been applied where the clearing firm acts outside of its traditional role and participates in the wrongful conduct. *See McDaniel v. Bear Stearns & Co., Inc.*, 196 F. Supp. 2d 343 (S.D.N.Y 2002) ("where a clearing firm moves beyond performing mere ministerial or routine clearing functions and becomes actively and directly involved in the introductory broker's actions, it may expose itself to liability with respect to the introductory broker's misdeeds") (citations omitted); *Koruga v. Fiserv Correspondent Services, Inc.*, 183 F. Supp. 2d 1245 (D. Or. 2001), *aff'd*, 40 Fed. App. 364 (9th Cir. 2002) (confirming arbitration award finding clearing firm and introductory broker jointly and severally liable for fraud where "panel made specific factual findings that [clearing firm] was directly involved in the challenged transaction and materially participated in the wrongdoing"); *Hirata Corp. v. J.B. Oxford and Company*, 193 F.R.D. 589 (S.D. Ind. 2000) (recognizing that a clearing firm's involvement in the broker's activities could render the clearing firm liable under Indiana Securities Code).

Counsel for Kostoff made the Panel aware of these cases and argued that Kostoff's case qualified as one of the "extraordinary circumstances" justifying liability because "[Fleet] was providing an[d] enabling, a bad broker-dealer . . ." (Grannum Aff., Ex. 5, Tape 4B, pp. 9, 13-16). Contrary to Fleet's suggestion, Kostoff's counsel did not urge the Panel to disregard the law. Rather, he urged the Panel to apply an exception to the general rule. The Panel, in its arbitration award, set forth the facts it found warranting application of the exception.

Specifically, the Panel found that Fleet was aware of the "malfunctioning of the Broker-Dealer Glen Michael Financial/Yankee Financial and Broker Vincent Cervone" and that a Fleet agent purposefully brought GMF together with Yankee Financial "so as to enable the offending [GMF] to change its name to Yankee Financial to continue to defraud [Kostoff]." (Dkt. 2, Ex. A, p. 4). According to the Panel, Fleet was "the major factor in allowing the fleecing of [Kostoff's] brokerage account." (Dkt. 2, Ex. Ex. A, p. 4). These findings are consistent with the Panel's conclusion that Fleet stepped outside the ministerial duties outlined in its Clearing Agreements and participated in the alleged wrongdoing, thereby stripping itself of the protections normally afforded clearing firms. Based on the evidence presented, the Panel could have reasonably inferred or concluded that Charles LaBella knew of GMF's regulatory problems because of his relationship with GMF's principals and GMF's contractual duty to report violations to Fleet. (Grannum Aff., Ex. 5, Tape 1B, p. 65, 2B, pp. 37, 46, Tape 3A, pp. 36-39, 51, Tape 3B, p. 28). LaBella testified that he also had a long standing relationship with Richard Kresge, President of Yankee Financial, and that LaBella "played a pivotal role in bringing [GMF and Yankee] together." (Grannum Aff., Ex. 5, Tape 3A, pp. 39, 45).

Before an arbitration award is considered to be arbitrary and capricious, "there must be *no ground*" for the Panel's decision. *See Brown v. Rauscher Pierce Refsnes, Inc.*, 994 F.2d 775, 781 (11th Cir. 1993) (emphasis added). By virtue of the express factual findings of the Panel, based on the circumstantial evidence presented, it can not be said that there are "no grounds" for its decision. Simply put, Fleet has not refuted every rational basis on which the Panel could have relied in finding that Fleet was liable to Kostoff. The Panel's legal conclusions can be inferred from the evidence. Accordingly, this Court cannot conclude that the Panel's decision was "simply an apparent arbitrary and capricious denial of relief with no factual or legal basis." *See Merrill Lynch*, 70 F.3d at 421

("[o]nly where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside").[6]

2.  Manifest Disregard of the Law

Vacatur on the grounds of manifest disregard of the law is proper where there is "clear evidence that the arbitrator was 'conscious of the law and deliberately ignore[d] it.'" *Hercules*, 441 F.3d at 910 (citing *Montes*, 128 F.3d at 1461). "In recognizing this ground for challenging arbitration awards, the Eleventh Circuit emphasized that it [is] a narrow ground available only in specific limited circumstances." *Isenhower v. Morgan Keegan & Company, Inc.*, 311 F. Supp. 2d 1319, 1326 (M.D. Ala. 2004) (citing *Montes*, 128 F.3d at 1261-62). "[A]n erroneous interpretation of the law would not subject an arbitration award to reversal, a clear disregard for the law would." *Montes*, 128 F.3d at 1461 (citations omitted). Thus, "there must be some showing in the record, other than the result obtained that the arbitrators knew the law and expressly disregarded it." *University Commons-Urbana, Ltd. v. Universal Constructors, Inc.*, 304 F. 3d 1331, 1337 (11th Cir. 2002) (citations omitted). Notably, the Eleventh Circuit "first adopted manifest disregard for the law as a basis for challenging an arbitration award in the *Montes* case" and that case remains the *only* case in which the Eleventh Circuit has ever found "the exceptional circumstances that satisfy the exacting requirements of the exception." *Hercules*, 441 F.3d at 910.

Here, Fleet has not met its heavy burden of establishing that the Panel acted in manifest disregard of the law. As noted, the record does not demonstrate that Kostoff's counsel urged the

---

[6] The Panel's conclusions with respect to Fleet's duty to monitor GMF, Kostoff's status as a third party beneficiary, and whether Fleet legally "conspired" with GMF and Yankee to continue the fraud are not critical to the Panel's decision to hold Fleet liable. It is therefore unnecessary for the Court to determine whether the Panel misapplied the law on these points. The Panel's finding that Fleet participated in the fraud supports its conclusion that Fleet stepped outside its role as clearing firm and alone provides a justification for imposing liability. To the extent that the Panel *may* have misinterpreted the law on any one of these other issues does not provide grounds to vacate the award in light of the other rational basis for holding Fleet liable. *See Scott*, 141 F.3d at 1018 ("a mere error in the application of the law will not support the reversal of an arbitration award") (citing *O.R. Sec. Inc. v. Prof. Planning Assoc.*, 857 F.2d 742, 746 (11th Cir. 1988)).

9

Panel to disregard the law. At the hearing, Kostoff's counsel recognized that the law regarding clearing firm liability tends to protect clearing firms, but correctly pointed out that when a clearing firm participates in the misconduct, courts have imposed liability. (Grannum Aff., Ex. 5, Tape 4B, pp. 9, 13-16, 27). He further provided the Panel with cases wherein clearing firms were found liable. (Grannum Aff., Ex. 5, Tape 4B, pp. 13-16). Therefore, neither the record nor the Panel's decision establish that the Panel was apprised of a clear and binding legal standard and consciously chose to ignore it. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995) ("an arbitration panel does not act in manifest disregard of the law unless (1) the applicable legal principal is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle").

Additionally, that Kostoff's counsel argued to the Panel that "lack of knowledge is not a defense" is insufficient to demonstrate that the arbitrators acted in manifest disregard of the law. "[T]he fact that an attorney misstated the law to the arbitration panel, as attorneys sometimes do, even if there was only weak evidence to support the award, will not justify a conclusion that the award resulted from a manifest disregard of the law." *Montes*, 128 F.3d at 1464 (Carnes J. concurring specially). This is particularly true where, as here, the Panel found that Fleet had actual knowledge of the fraudulent activity. (Dkt. 2, Ex. A, p. 4) ("[Fleet] equally had the duty to be aware of the malfunctioning of the Broker Dealer Glen Michael Financial/Yankee Financial and Broker Vincent Cervone, and *in matter of fact was so aware at all times* during the duration of [Kostoff's] Account;" "*Fleet was aware* and under the circumstances had a duty to be aware *of the constant churning of Claimant's account*") (emphasis added). The facts of this case simply do not establish that the arbitrators consciously chose to disregard the law. *See Hercules*, 441 F.3d at 911 (recognizing *Montes* as the only case wherein the Eleventh Circuit found circumstances establishing

a manifest disregard of the law and emphasizing "the rare nature of the circumstances in that case").[7]

*Punitive Damages*

Fleet contends that the Panel's award of punitive damages violates its due process rights because "[i]n light of the well-settled law that Feet had no duties at all to Kostoff . . . Fleet had no notice that its conduct would subject it to any award of punishment, much less treble damages." (Dkt. 6, p. 18). In order to establish that the Panel's award of punitive damages was in manifest disregard of the law, Fleet must establish that the Panel was conscious of the law regarding punitive damages and deliberately ignored it. Fleet again fails to meet its burden. Moreover, its attempt to have this Court substitute its judgment for that of the Panel's is unavailing.[8]

Pursuant to Florida Statute, § 768.72 a "defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence." § 768.72, Fla. Stat. "'Intentional misconduct' means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." *Id.* "'Gross negligence' means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious

---

[7] The facts that the *Montes* Court relied on in finding a manifest disregard of the law were that: 1) the party who obtained the favorable award had conceded to the arbitration panel that its position was not supported by the law, which required a different result, and had urged the panel not to follow the law; 2) that blatant appeal to disregard the law was explicitly noted in the arbitration panel's award; 3) neither in the award itself nor anywhere else in the record [was] there any indication that the panel disapproved or rejected the suggestion that it rule contrary to law; and 4) the evidence to support the award [was] at best marginal.

*Hercules*, 441 F.3d at 911 (citing *Montes*, 1 128 F.3d at 1464 (Carnes J. concurring specially)).

[8] Fleet's reliance on *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 41-418 (2003) is misplaced. In *Campbell*, the Court found a punitive damages award unreasonable and in violation of the Due Process Clause because the amount awarded was nine times the amount of pain and suffering damages. In contrast, the Panel's award of punitive damages in the amount of $343,125.30 does not exceed the constitutional limitations discussed in *Campbell*. Nor was it "grossly excessive or arbitrary." See *Campbell*, 538 U.S. at 417.

11

disregard or indifference to the life, safety, or rights of persons exposed to such conduct." *Id.*

The Panel determined that Fleet was aware of the fraudulent activity and despite this knowledge, deliberately enabled GMF to change its name to Yankee so that it could continue to defraud Kostoff. (Dkt. 2, Ex. A, p. 4). The Panel further found that "Fleet was the major factor in allowing the fleecing of [Kostoff's] brokerage account and joined the broker and broker dealer in total violation of Securities Exchange Act, rule 10b-5, and Florida Statutes 517 . . ." *Id.* Based on the record before the Panel, this Court cannot conclude that there was no evidentiary basis for the Panel's award of punitive damages or that the Panel acted in manifest disregard of the law. Even if this Court would have resolved the issues differently, that would not justify setting aside the award. *See Hercules*, 441 F.3d at 911 (citations omitted). "[A] litigant arguing that an arbitrator acted in manifest disregard of the law must show something more than a misinterpretation, misstatement, or misapplication of the law." *Id.* (citations omitted). None of Fleet's arguments in favor of vacating the award meet this exacting standard.

3.  Award of Attorneys' Fees

Fleet contends the Panel acted improperly by awarding attorney's fees and that the amount of fees should not be decided by a state court.[9] (Dkt. 6, p. 19). In response, Kostoff requests this Court confirm the Panel's award of fees and reserve jurisdiction to determine the appropriate amount.

Section 682.11, Florida Statutes, is part of the Florida Arbitration Code and provides that "[u]nless otherwise provided in the agreement or provision for arbitration, the arbitrators' and umpire's expenses and fees, together with other expenses, *not including counsel fees*, incurred in the

---

[9] It is not completely clear whether Fleet challenges the Panel's authority to award attorney's fees or merely contends that an amount should not be determined by a Florida state court, as Kostoff requested in her petition. (Dkt. 2). For the sake of completeness, this Court presumes Fleet raises both challenges.

12

conduct of the arbitration, shall be paid as provided in the award." § 682.11, Fla. Stat. (emphasis added). This provision has been interpreted as prohibiting arbitrators from awarding attorney's fees in their award of expenses and fees incurred during arbitration proceedings. *See Turnberry Associates v. Service Station Aid, Inc.*, 651 So. 2d 1173, 1175 (Fla. 1995). Rather, a party's entitlement to fees and the amount of fees are properly decided by the court upon application for confirmation of the arbitration award. *Id.* Notwithstanding this general rule, "the parties may, by their actions, filings, and submissions, expressly waive their right to insist that only a court decide the issue of attorney's fees." *Cassedy v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 751 So.2d 143, 149-50* (Fla. 2st DCA 2000) (holding parties waived the right to insist that a court decide attorney's fees issue because (1) both parties agreed to submit to arbitration all the claims raised in the statement of claim, which included a claim for attorney's fees, (2) neither party reserved the right to a judicial determination of fees, and (3) the parties actively litigated the issue of entitlement to attorney's fees before the panel); *see also Moeller v. Cassedy*, 364 F. Supp. 2d 1340, 1342 (N.D. Fla. 2005).[10]

Here, Kostoff sought attorney's fees in her Statement of Claim and signed the Uniform Submission Agreement thereby agreeing to submit her claims and all related counterclaims to arbitration. (Grannum Aff., Ex. 2, p. 8; Ex. 6). At the arbitration, Kostoff's counsel asked the Panel to award Kostoff attorney's fees. Fleet requested that its attorney's fees be assessed against Kostoff's counsel personally. The parties' actions in this regard amount to an agreement to waive the right to submit the issue of attorney's fees to a court. The Panel therefore had the authority to

---

[10] This Court acknowledges the conflicting opinion in *D.H. Blair & Co., Inc. v. Johnson*, 697 So. 2d 912, 914 (Fla. 4th DCA 1997), rejecting the argument that parties may waive their right to a judicial determination of fees by their actions. *D.H. Blair*, 697 So. 2d at 914 (holding absent an express agreement, the issue of attorney's fees remains with the court). Notwithstanding, this Court finds the reasoning in *Cassedy* persuasive and consistent with the long standing public policy favoring arbitration as a complete and efficient means of resolving disputes.

make an award of attorney's fees and appropriately determined that pursuant to § 517.211(6), Fla. Stat., Kostoff was entitled to fees. Even if the Panel did not have the authority, this Court finds Plaintiff is entitled to fees pursuant to § 517.211(6), Fla. Stat. as the prevailing party. The Court reserves jurisdiction to determine the amount of fees to which Kostoff is entitled. Accordingly, it is

**ORDERED AND ADJUDGED** that:

1. Kostoff's Petition for Confirmation of Arbitration Award (Dkt. 2) is **GRANTED**.

2. Fleet's Cross-Petition to Vacate Arbitration Award (Dkt. 5) is **DENIED**.

3. This Court reserves jurisdiction to determine the appropriate amount of attorney's fees to be awarded to Kostoff. Kostoff shall have fourteen (14) days from the date of this order to file a motion for attorney's fees in accordance with Local Rule 4.18.

**DONE AND ORDERED** in chambers this 5th day of April, 2007.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record

14